CATHERINE BOWMAN *v.* ALFRED CARR, EX'R, *et al.*

ADMINISTRATION. *Foreign assets.* An administrator is not liable for foreign assets, even though he has taken steps to secure them; and where such steps were taken in good faith, he will be allowed credit for expenses incurred thereby.

FROM WASHINGTON.

Appeal from the Chancery Court at Jonesboro. H. C. SMITH, Ch.

JOHN ALLISON for complainant.

S. J. KIRKPATRICK and E. C. REEVES for defendant.

McFARLAND, J., delivered the opinion of the court.

Shortly previous to the 1st of May, 1871, Daniel Bowman died, having shortly before made and published his will. He left his widow, the complainant Catherine, and a son, Hiram Bowman, surviving him. His estate, aside from household furniture, consisted in vacant or unimproved lots in the town of Johnson City, $2,140 cash, and a note for $6,000 on one Leift, of the city of Philadelphia, Penn. The will disposes of testator's estate as follows:

"Second. All the lots that I own in Johnson City I will for the use of the family, that is to say, to Catherine Bowman and my son Hiram Bowman, during

their natural lives; after the death of my wife Catherine Bowman, and Hiram Bowman, I will it to my son Hiram Bowman's legal heirs. My will is, to put two thousand dollars of my money out at interest in government bonds, if it can be done, for the use of my wife Catherine Bowman and Hiram Bowman jointly, but not to go to Hiram if he drinks liquor.

"Thirdly. The six thousand dollars that is due me on the 8th April, 1871, now in the hands of Abram H. Leift, Race street, Philadelphia, Pennsylvania State, to be collected, if it can be, by my executor or executors, or administrators, and put on interest upon the same conditions and in the same way that the two thousand dollars heretofore spoken of was."

Carr, who qualified as executor, took possession of the $2,140 cash and the $6,000 note, made annual settlements with the county court, charging himself with the cash and six per cent interest annually, and receiving credits for various disbursements, including debts paid and an allowance to the widow for her year's support, and taxes paid on the town lots, commissions, etc., and showing that he has paid one-half of the interest on the remaining fund to complainant, and the other half to Hiram Bowman, or to the use of the infant child of said Hiram, he having died, leaving said child his only heir.

The present bill was filed by the widow on the 5th of May, 1876. She shows that she is in feeble health and in destitute circumstances; that the town lots are unproductive; that one-half of the interest on the remainder of said fund of $2,140 is wholly insuf-

ficient · for her support.    She charges that the execu-
tor is liable for the $6,000 note referred to, because
he undertook its collection and sent an agent to Phil-
adelphia for that purpose, paying the expense out of
the fund in his hands; that if not liable for the
debt, he should be required to account for the amount
expended in sending an agent to Philadelphia; that
the executor was not authorized to pay the taxes on
the town lots out of the fund in his hands, they re-
ducing her means of support.    Further, that she has
the right to have the lots sold, so as to convert the
same into a fund that will draw interest, so as to
enable her to realize a support ·from the use thereof.
She charges that, by a proper construction of the ,will,
she is entitled to use the principal of the fund in the
hands of the executor, if necessary, for her support,
and that the executor should be charged with interest
at the rate of ten per cent., because he either in fact
loaned the money, or part of it, at that rate, or
could have done so.

The executor, and the infant defendant by a guar-
dian *ad litem* filed answers.

The complainant subsequently married, and the cause
was revived in the name of her husband and heard
by the chancellor, who rendered a decree to the fol-
lowing effect, namely:    1st. That complainant was not
entitled to a sale of the town lots, but is entitled to
the rents and profits during her life after paying the
taxes.    2d. That the executor and his sureties are not
liable for the Leift note of $6,000.    3d. That the
executor is liable for ten per cent. interest on the

fund in his hands during the period ten per cent. was a legal rate of interest, because he has for part of the fund received that rate of interest and could have loaned at that rate, and the cause was referred to the master to report the amount of interest with which the executor is chargeable on this basis, with annual rests, but no account of such additional interest since the last settlement with the county court to be taken.

The complainant and her husband were allowed to appeal, and the executor also appealed from the decree so far as it charges him with additional interest.

In response to the questions made in argument, we hold—

1st. That complainant is not entitled to a sale of the vacant lots, so far as appears from anything in the record. She is only entitled to a life estate by the plain language of the will; and although the use of the same during life will probably be of little value to her—only valuable for raising vegetables, as is alleged—still, as the will does not direct them to be sold, and as it is not alleged or shown that it will be to the interest of all parties, including the remainderman, that they be sold, we know of no principal upon which we can order a sale simply for the purpose of increasing the income of the tenant for life. Complainant can, of course, at any time, sell her life estate, without the aid of a court, and thus realize its value.

2d. The chancellor held correctly that the executor is not liable for failing to collect the $6,000 note.

Bowman *v.* Carr.

Although the note came to his hands, and was *bona notabilia* in his hands, still it is not alleged that there was any means of collecting the note in this State, and it is well settled that an executor is not required to go into another State to collect assets. The chancellor did not in terms decide the question whether the executor was chargeable with the sum expended in sending an agent to Philadelphia to see after the claim; but such an expenditure, made in good faith, would be proper, especially if, as the answer states, it was made at the instance of the parties in interest.

3d. In regard to the additional interest charged to the executor, he says in his answer: "Respondent shows that he has loaned said fund to John White, H. H. Carr, J. M. Carr, P. G. Range, J. D. Reeves, David Hunt and W. W. Gilmer, and from some of these parties he has received interest at the rate of six per cent. per annum, from some seven, and from others ten per cent. per annum, and that he has only accounted for six per cent.; and he further admits that he has had applications to borrow the fund at ten per cent., and in some cases the parties could have made good notes, and in others they could not. Why he refused to loan to those who could have made a good note, is not shown. There may have been good reasons for his not loaning to such persons, and we cannot say that he has been guilty of bad faith. At all events, the executor is clearly liable for the interest he actually received, and he should be compelled to disclose the amounts specifically. In this respect the decree will be modified.

The remaining question is, what interest the complainant takes in the fund in the hands of the executor. The executor has assumed that she was only entitled to one-half of the annual interest, or, in other words, that she and Hiram Bowman took a life estate in the fund. But it will be observed, that although the estate given to them in the town lots is limited to a life estate, with remainder over, there is no limit in respect to the cash fund, nor any bequest over of a remainder in said fund. It is given for their use without limit, and this in general carries the whole fund; and although it might be plausibly argued that the intention was to limit the bequest to a life estate as was done in reference to the land, still we think such is not the proper construction. The direction to invest in bonds finds its explanation in the allusion to his son's intemperate habits, the purpose being to keep the same out of his hands in the event of his intemperance. We hold that complainant is entitled to one-half of the fund, and direct that it be paid to her. 5 Cold., 229.

In the particulars indicated the decree will be modified, and the cause remanded. The costs will be paid by the executor out of the fund.